UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| REGINOLD MINTZ, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Civil Action No. 00-0539 (RWR) |
| v. ) | |
| ) | |
| DISTRICT OF COLUMBIA, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

MEMORANDUM

Currently pending in the above-captioned case is a motion and cross-motion for summary judgment filed by plaintiffs and defendant. In an accompanying Order, plaintiffs' motion is granted in part and denied in part, and defendant's motion is granted in part and denied in part.

Plaintiffs filed a Statement of Material Facts Not in Dispute ("Statement") [dkt no. 73] . Defendant did not file a contravening statement of facts in dispute in accordance with Local Civ. R. 56.1. Accordingly, plaintiffs' Statement of Material Facts is deemed admitted by defendant. See id.

I.      **Background and Procedural History**

    A.    **Facts**

On September 9, 1996, plaintiffs Reginold Mintz and Selwyn Darbeau, both of whom are African-American males, were hired by the LaShawn General Receivership to work as Contract Specialists in the Office of Grants, Contracts and Procurement

("Contracts Office"). The Receivership was established by court order to run and oversee the Child and Family Services Agency, D.C.'s child welfare agency, due to egregious problems in management. See LaShawn A. v. Kelly, 887 F. Supp. 297, 297-98 (D.D.C. 1995). Mintz was hired on a probationary 3-month basis, and was terminated during the probationary period (in November 1996). Darbeau was terminated on April 5, 2001.

Also on September 9, 1996, the Contracts Office hired John Oppedisano and Jim Osbourne, both of whom are white males. See Statement ¶ 6. In October or November 1996, Oppedisano was appointed as the supervisor of the Contracts Office. He held that position until April 1998. See id. ¶ 8. Osbourne did not have a supervisory position. However, Oppedisano "delegated authority to him and treated him like a supervisor." Id.

Plaintiffs' Statement reveals the following undisputed facts regarding the conduct of Oppedisano and Osbourne in the workplace:

- Oppedisano "referred to Plaintiff Mintz and other African-Americans, including other African-American employees of the agency, as 'niggers' and 'dumb ass niggers.'" Statement ¶ 9.

- Oppedisano told Mintz that "'[y]ou are just like the rest of these people here – a dumb ass nigger.'" Id.

- Oppedisano, in the presence of both plaintiffs, referred to another employee as a "'Muslim nigger.'" Id.

- Oppedisano made other racist remarks in the workplace. See id. These

remarks were discussed during a staff meeting on October 15, 1996. See id.

- After Mintz began to protest the racial comments, Oppedisano and Osbourne began to harass Mintz, arguably in an attempt to provoke him to anger. These comments included vulgar sexual and racial references. For example, Osbourse asked Mintz whether, as a "tall, Black man" he "liked having it up the ass." Id. ¶ 16. In the restroom, Oppedisano said to Mintz, "I like it anal, Reginold, don't you want to give it to me? You're a black stud." Id. Oppedisano also sexually propositioned Mintz on other occasions. See id.

- In addition, on one occasion Osbourne picked up a picture of Mintz's son on his desk, and told Mintz that Osbourne "liked having sex with boys." Id. Osbourne also asked Mintz whether he "liked boys." At this point Darbeau interceded and took Mintz for a walk around the block so that he would calm down. See id.

- The situation was exacerbated by the "long hours and close quarters." Id. ¶ 14. According to the unrebutted statement of plaintiffs, the "Contract Specialists worked several hours in excess of the normal work day for six to seven days a week [to complete their work]. . . . The office setting was congested, with a total of approximately seven or eight persons occupying a very small office." Id.

- As a result of the foregoing facts, the "work environment caused particular distress to the African-American females in the unit, one of whom was Muslim." <u>Id.</u> at ¶ 9.

In response, both plaintiffs reported the behavior of Oppedisano and Osbourne to Farouk Hosein, who was Oppedisano's direct supervisor. <u>See</u> <u>id.</u> ¶ 15. Following the sexual comments described above, Mintz reported Oppedisano to the Agency's Intake and Assessment Desk, which is where employees filed complaints. He was assured that someone would take action, but no action in fact occurred. <u>See</u> <u>id.</u> ¶ 16.

On November 15, 1996, Mintz filed a formal EEO complaint with the Agency; he was immediately placed on administrative leave. <u>See</u> <u>id.</u> ¶ 19. The Director of Personnel, Mary Montgomery, testified that the person under investigation is normally placed on administrative leave – not the person who filed a complaint. <u>See</u> <u>id.</u> ¶ 19. On November 21, 1996, the Receivership sent a termination letter to Mintz. <u>See</u> Letter from Farouk A. Hosein to Reginold Mintz (Nov. 21, 1996) (Pltfs' Mot. for SJ Ex. F).

**B.    Procedural History**

On March 13, 2000, plaintiff Mintz initially filed a complaint against the LaShawn Receivership, which oversaw the Child and Family Services Agency. On the authority of a July 13, 2004 Order, Mintz and Darbeau amended their complaints to name the District of Columbia as the defendant. Mintz's amended complaint contains two counts: (1) racial discrimination and harassment, and (2) retaliatory termination. Both of these counts are

predicated on violations of 42 U.S.C. § 2000(e) (Title VII), and 42 U.S.C. §§ 1981; 1981a.[1]  Darbeau's Complaint states four counts: (1) retaliatory termination; (2) retaliatory change in employment conditions; (3) breach of contract; and (4) intentional infliction of emotional distress.

On July 14, 2005, plaintiffs moved for summary judgment on most of their claims. On July 18, 2005, defendants cross-moved for summary judgment, contending in part that the LaShawn General Receivership is immune from suit.

## II.   Immunity

In arguing that the Receivership enjoys absolute immunity from suit, defendant cites a decision of current Chief Judge Hogan who established the Receivership; he held that a "court's receivership has absolute judicial immunity when acting within the scope of the authority granted the receiver." See Mem. Op. in Drew v. Baktash, No. 00-1661 (D.D.C. Sept. 18, 2001) (Defs.' SJ Mot. Ex. Q) at 10.  However, this holding was in the context of the Receivership acting as a judicial entity; judicial immunity only extends to judicial acts.  See id. at 9.  The Receivership was granted "all necessary authority to carry out its responsibilities," including "[a]ll tasks and activities relating to the implementation of the Remedial Order and the Implementation Plan." See LaShawn General Receivership Order, LaShawn A. v. Barry, No. 89-1754 (D.D.C. Aug. 24, 1995).

---

[1] Plaintiffs also include a claim under the D.C. Human Rights Act.  However, as plaintiffs acknowledge, this claim has already been dismissed for lack of jurisdiction.  See Darbeau Amen. Compl. at 5 n.7.

5

However, as plaintiffs correctly note, even judges are subject to discrimination suits, because discriminatory acts are not judicial acts. See Forrester v. White, 484 U.S. 219 (1988) (no judicial immunity for state court judge who allegedly discriminated against probation officer based on gender). Accordingly, defendant's bid for absolute immunity is rejected.

### III. Mintz's Racial Harassment Claim

"When the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated." Oncale v. Sundowner Offshore Servs., 523 U.S. 75, 78 (1998) (citations and internal quotation marks omitted). "[W]hether an environment is 'hostile' or 'abusive' can be determined only by looking at all the circumstances. These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris v. Forklift Sys., 510 U.S. 17, 23 (1993). The Supreme Court has held that "conduct must be extreme to amount to a change in the terms and conditions of employment." Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998). For example, "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." Id. (citation and internal quotation marks omitted).

The undisputed facts reveal that Mintz was subject to a racially hostile work environment. Although isolated incidents of teasing or even offensive comments are not sufficient to state a claim, the remarks in this case are particularly egregious. Indeed, other courts have found the use of the "nigger" to be so offensive that it need not happen often to create a hostile work environment. See Walker v. Thompson, 214 F.3d 615, 626 (5th Cir. 2000) (handful of racially disparaging remarks, including use of the word "nigger," sufficient to establish question of fact regarding hostile work environment); see also Swinton v. Potomac, 270 F.3d 794, 817 (9th Cir. 2001) (upholding $1 million punitive damages award when plaintiff was subject to stream of jokes, including "nigger" jokes, when "nigger" was "perhaps the most offensive and inflammatory racial slur in English . . . a word expressive of racial hatred and bigotry.") (internal quotation marks and citation omitted). These racial epithets were compounded in this case by shockingly offensive sexual comments that were apparently meant to "punish" Mintz for complaining about the racial harassment.

With these essential facts unrebutted, Mintz is entitled to summary judgment on this claim.

**IV.   Retaliation**

"In order to state a prima facie case of retaliation, plaintiff must demonstrate: (1) that she engaged in a statutorily protected activity; (2) that the employer took an adverse personnel action; and (3) that a causal connection existed between the two." Stewart v.

Evans, 275 F.3d 1126, 1134 (D.C. Cir. 2002) (citation omitted).  If a plaintiff establishes a prima facie case of retaliation, the burden shifts to defendant to articulate a legitimate, non-discriminatory reason for the employment action.  See McDonnell Douglas v. Green, 411 U.S. 792, 802 (1973).  If the defendant meets that burden, plaintiff must demonstrate that the articulated reason is pretextual.  See Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 252-53 (1981).

      A.      **Mintz's Retaliation Claim**

Mintz's retaliation claim rests on his termination during his three-month probationary period.

Assuming a prima facie case of discrimination, there is a question of fact about whether there was a legitimate, non-discriminatory reason for Mintz's termination.  Defendant provided the affidavit of Farouk Hosein, who hired Oppedisano, Osbourne, Mintz, and Darbeau.  According to Hosein, soon after Mintz began his employment Oppedisano told Hosein about his concerns regarding Mintz's performance.  Hosein Decl. (Mar. 10, 2003) ¶ 6.  Hosein and Oppedisano had "mulitple" conversations in this regard.  Id. ¶ 7.  During that time period, Hosein had "direct personal conversations with Mr. Mintz regarding his lack of production in processing contract actions, as well as his attention to matters that were not within his scope of performance."  Id. ¶ 8.  Hosein eventually accepted Oppedisano's recommendation that Mintz be terminated.  Id. ¶ 11.  On the other hand, Mintz's "co-workers held [him] in high regard for his professionalism,

experience, dedication and leadership." Statement ¶ 1 (citing third party depositions).

Hosein's Declaration does not conclusively prove that Mintz's termination was based on merit – nor does it disprove it. It does, however, raise at least a question of fact regarding the merits of Mintz's termination. For example, Oppedisano may have had a reason to fabricate or exaggerate complaints about Mintz's work in response to Mintz's complaints. In that light, summary judgment for either party would be inappropriate.

Mintz also moved for summary judgment on his purported claim of hostile work environment based on retaliation. See Pltfs' Mot. for SJ (July 14, 2005) at 16. However, Mintz makes no allegations in his Amended Complaint about retaliatory acts except for his termination. See generally Mintz Amen. Compl.; compare with Darbeau Amen. Compl. ¶¶ 31-57 (alleging two separate claims of retaliatory changes in Darbeau's employment and retaliatory termination).

Because Mintz's Amended Complaint never alleged retaliation beyond his termination, this claim is not properly before this court. To the extent he argues that Oppedisano's actions, particularly his sexual comments, were retaliatory, these comments were already considered in the context of Mintz's racial discrimination claim. See supra Part III.

**B.     Darbeau's Retaliation Claim**

Darbeau claims that he was retaliated against for supporting Mintz's discrimination suit – although the retaliation was somewhat delayed. On April 5, 2001,

9

the court held a status conference hearing in this case. At that hearing, counsel for defendant read, apparently for the first time, Darbeau's affidavit in support of Mintz's discrimination claims. See Statement ¶ 44. Three hours later, Darbeau was notified that the Receivership decided to not renew its contract with him, effective May 4, 2001. See id. These facts too are unrebutted.

Defendant argues that Darbeau does not demonstrate that it took an adverse employment action when it simply declined to renew Darbeau's contract, which is not an "action." This argument is not persuasive. An adverse employment action can be a refusal or failure to take an action. See, e.g., Nat'l R.R. Passanger Corp. v. Morgan, 536 U.S. 101, 114 (2002) ("unlawful employment practice[s]" include "[d]iscrete acts such as . . . failure to promote, denial of transfer, or refusal to hire.").

Defendant also contends that Darbeau failed to demonstrate a causal connection between the protected activity and the adverse employment action. In July and October 1998 Darbeau filed affidavits in support of Mintz with the D.C. Office of Human Rights; on April 5, 2001 the D.C. government notified Darbeau that it was not going to renew his contract. Plaintiffs respond[2] that defense counsel learned for the first time on that day about the allegations – and, by extension, Darbeau's supporting affidavits. In that light, the relevant question is when defendant learned about the protected activity that allegedly led to the retaliation.

---

[2]Plaintiffs' Opposition to Defendant's Motion for Summary Judgment primarily relies on their original motion for summary judgment.

Hence, there is a material question of fact about the timing of Darbeau's termination, when defendant knew about Darbeau's assistance with Mintz's claims, and if it was in retaliation for his support. Plaintiffs' motion and defendant's cross-motion for summary judgment are accordingly denied.

## V.     Darbeau's Remaining Claims

### A.     Retaliation in Terms and Conditions of Employment

Darbeau separately alleges that defendant also created a hostile work environment by retaliating against him in the terms and conditions of his employment after he corroborated Mintz's claims of discrimination in 1996. Darbeau maintains that he worked under the constant threat of termination because of his one-year renewable contract. As defendant correctly notes, however, all employees with one-year renewable contracts lived under a "threat" of termination, and Darbeau has presented no evidence that he was directly threatened with termination. He also suggests that the threat was implied. This may be true, but there are no facts to support the threat allegation.

Darbeau contends that defendant also retaliated against him by excluding him from meetings. Also some of his colleagues allegedly ignored him. Moreover, in January 2001, when the Agency moved its offices it placed him in a noisy and busy hallway; his other colleagues received cubicles. Darbeau also argues that he was denied certain training benefits, although many of these training opportunities involved a competitive application process and were not an entitlement.

In addition, the evidence suggests that defendant was at times accommodating to him. Darbeau was diagnosed with cancer, and needed to obtain insurance. In response to his request, defendant converted him to a probationary government employee on January 12, 1999 so that he could obtain health care. See Pltfs' Mot. for SJ at 27-28. It took longer for this conversion than defendant wished; but the conversion was effected.

More fundamentally, as defendant argues in opposition, Darbeau fails to cite to any caselaw that these conditions, if proved, would constitute retaliatory harassment. In his reply brief Darbeau provides no legal argument for why his conditions of employment were akin to retaliation. Accordingly, the accompanying Order grants summary judgment to defendant on this claim.

**B.     Breach of Contract**

Darbeau contends that defendant violated Darbeau's contract by failing to renew his one-year appointment contract and by failing to convert Darbeau to permanent status as a D.C. government employee. According to Darbeau, these actions violated the promise that defendant made to him when he was hired in 1996 and every year thereafter until his termination to hire him permanently or convert him to a D.C. employee after the Receivership ended. See Darbeau Amen. Compl. ¶¶ 47-51; 58; Statement ¶¶ 2-3.

Defendant moves for summary judgment[3] on the ground that Darbeau's one-year

---

[3] Darbeau appears to assume erroneously that he moved for summary judgment on this claim. See, e.g., Pltfs' Reply to Def's Opp. to Pltfs' Mot. for SJ (July 21, 2005), at 11. He did not.

term of employment expired, and Darbeau "pointed to no law or regulation in this jurisdiction that mandates his re-appointment as a term employee." Def's Mot. for SJ (July 18, 2005), at 20.  Although there may be no law mandating reappointment in the typical case, in this case Darbeau stated that he was "induced" to take the job on the promise that he would either be renewed or converted to permanent status.  See Pltfs' Opp. to Def's Mot. for SJ (July 19, 2005) ("Pltfs' Opp."), at 19; see also Statement ¶ 3. These facts, if proven, would establish a condition of Darbeau's employment which is binding on defendant.  See Hodge v. Evans Fin. Corp., 823 F.2d 559, 565 (D.C. Cir. 1987) (oral promise at hiring to employ Hodge permanently was enforceable).  The pending motions afford no opportunity to make the necessary proof; defendant's summary judgment motion is denied.

### C. Intentional Infliction of Emotional Distress

Defendant argues that Darbeau's claim for intentional infliction of emotional distress must be dismissed because he did not give notice of his claim within 6 months after the "injury or damage was sustained." D.C. Code § 12-309 (2002).  In response Darbeau attaches a letter from his counsel to Mayor Anthony Williams, which outlined Darbeau's intentional infliction of emotional distress claim.  See Letter from Dawn V. Martin to Mayor Anthony Williams, Sept. 28, 2001 (Pltfs' Opp. Ex. B.).  In its reply brief defendant does not respond to this letter or address whether the letter meets the § 12-309 requirements.  Instead, defendant argues that Darbeau's claim fails because it does not

satisfy the elements of the tort. Defendant's arguments made for the first time in its reply brief cannot be considered. Moreover, defendant has not disputed the underlying factual basis for Darbeau's claim. These facts may prove that defendant engaged in extreme or outrageous behavior that intentionally or recklessly caused Darbeau severe emotional distress. See Sere v. Group Hospitalization, 443 A.2d 33, 37 (D.C. 1982).

**VI.    Conclusion**

For the foregoing reasons, an accompanying order directs that Mintz's motion for summary judgment be granted with respect to his racial harassment claim, and denied with respect to his retaliation claim. Darbeau's motion for summary judgment is denied as to all claims. Defendant's motion for summary judgment is granted with respect to Darbeau's claim for retaliatory changes in employment; the motion is otherwise denied.


/s/

Louis F. Oberdorfer
UNITED STATES DISTRICT JUDGE

Dated: May 30, 2006